FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

16 DEC 20  PM 2: 56

CLERK.U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
          DEPUTY CLERK

ESTER   WEAVER,   WALTER   WEAVER,
SANDRA LYNCH, MICHAEL LYNCH, and
JULIE PERKINS,
                    **Plaintiffs,**

-vs-                                                    Case No.  A-16-CA-1195-SS

BRENT   STROMAN,   MANUEL   CHAVEZ,
ABELINO "ABEL" REYNA, and JOHN DOE,
                    **Defendants.**

---

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and

specifically, Defendants Brent Stroman Manuel Chavez, and Abelino "Abel" Reyna's Joint Motion

to Transfer Venue [#8] and  Plaintiffs' Amended Response [#13] in opposition.  Having considered

the aforementioned documents, the case file as a whole, and the applicable law, the Court enters the

following opinion and order.

### Background

This is a § 1983 action arising from a violent incident at a Twin Peaks restaurant in Waco,

Texas on May 17, 2015.    *See* Compl. [#1] ¶ 1.  That day hundreds of motorcycle club members

gathered at the restaurant for a Texas Confederation of Clubs & Independents (COC) meeting.  *See*

*id.* ¶ 13.  During the COC meeting, shooting broke out between some of the bikers.  *See id.* ¶ 14.

Law enforcement officers responded to the violence with their own gun fire.  *See id.*  Once the

shooting ceased, nine individuals lay dead and at least twenty were injured.  *See id.* ¶ 23.  Based on

a single affidavit, law enforcement officials arrested 177 persons, including Ester Weaver, Walter Weaver, Sandra Lynch, Michael Lynch, and Julie Perkins (collectively, Plaintiffs), and detained a number of other bikers. *See id.* ¶ 36; Am. Resp. [#13] at 3. While a grand jury in McLennan County indicted over 100 of those arrested for the felony of Engaging in Organized Criminal Activity with the Intent to Commit or Conspire to Commit Murder, Capital Murder, or Aggravated Assault, Plaintiffs have not yet been indicted. *See* Compl. [#1] ¶¶ 73, 90, 108, 126, 144.

Plaintiffs brought this suit against Defendants Stroman, the Chief of the Waco Police Department, Chavez, a Waco police officer, and Reyna, the District Attorney of McLennan County, Texas (collectively, Defendants), claiming they were wrongfully arrested in violation of their Fourth and Fourteenth Amendment rights and alleging Defendants conspired to deprive them of those rights.[1] *See id.* ¶¶ 145–172. Specifically, Plaintiffs argue the arrest warrant Defendants obtained was based on a "template" affidavit which failed to provide any particularized facts, contained false and materially misleading statements, and conflicted with evidence showing Plaintiffs were not involved in the violence. *See id.* ¶¶ 39–50. Instead of particularized facts, Plaintiffs state their arrests were based on "motorcycle club association and/or clothing, patches, key chains, etc. that Defendants arbitrarily decided reflected 'support'" for two of the rival biker clubs involved in the shooting. *Id.* ¶ 34.

---

[1] Ten other similar lawsuits have been brought against Defendants in the Austin Division. *See* Civil Action No. 1:15-CV-01040-SS, *Bucy v. Stroman, et al.;* Civil Action No. 1:15-CV-01041-SS, *Clendennen v. Stroman, et al.;* Civil Action No. 1:15-CV-01042-SS, *Bergman v. Stroman, et al.;* Civil Action No. 1:15-CV-01043-SS, *Adame v. Stroman, et al.;* Civil Action No. 1:15-CV-01044-SS, *Salinas v. Stroman, et al.;* Civil Action No. 1:15-CV-01045-SS, *Vensel v. Stroman, et al.;* Civil Action No. 1:16-CV-00575-SS, *Obledo v. Stroman, et al.;* Civil Action No. 1:16-CV-00599-SS, *Terwilliger, et al. v. Stroman, et al.;* Civil Action No. 1:16-CV-00648-SS, *Rhoten, et al. v. Stroman, et al.;* Civil Action No. 1:16-CV-1195-SS, *Eaton, et al. v. Stroman, et al.*

Defendants now move to transfer venue from the Austin Division of the Western District of Texas to the Waco Division. *See* Mot. [#8] at 1. In support, Defendants allege the following venue facts:

- All Defendants work and reside within McLennan County, Texas, which the Waco Division serves. *See id.* [#6-1] Ex. D-1 (Reyna Affidavit); *id.* [#6-2] Ex. D-2 (Stroman Affidavit).

- The Twin Peaks restaurant is located in McLennan County. *See id.* [#6] ¶ 2.05.

- The bikers' arrests, detention, prosecution, and Grand Jury indictments occurred in McLennan County. *See id.*

- All of the records and evidence retained and/or considered by the Waco Police Department, McLennan County Criminal District Attorney's Office, the state courts, and the McLennan County Grand Jury are located in Waco. *See id.* ¶ 2.07.

- The "vast majority of potential witnesses reside in McLennan County," including law enforcement officials, prosecutors, judicial personnel, and residents of McLennan County. *See id.* ¶ 2.08.

- The federal courthouse in Waco is approximately 100 miles closer to the Waco Police Department and the Criminal District Attorney's Office than the Austin federal courthouse. *See id.* ¶¶ 2.09–2.10.

- Proceedings in the Austin Division would burden Defendants, witnesses, and the offices they serve, both in terms of time and expense. *See id.* ¶ 2.11.

- Keeping the cases in the Austin Division interferes with Defendants' counsels' ability to effectively represent their clients. *See id.*

In response, Plaintiffs assert the following facts relevant to venue:

- Potential witnesses reside across Texas. *See* Am. Resp. [#13-1] Ex. P-1 (Uribe Affidavit) ¶¶ 2, 8. In particular, of the 244 bikers arrested or detained, only 53 are from Waco; the rest reside in a number of different cities and regions throughout Texas. *See id.* Similarly, the law enforcement personnel involved in the investigation included Department of Public Safety (DPS) officers from its Austin headquarters and surrounding cities. *See id* ¶¶ 2, 7.

- Significant evidence is located in Austin and in other parts of Texas other than Waco. *See id.* [#13] at 3–6. DPS officers obtained video recordings of the incident which are likely kept at DPS headquarters in Austin. *See id.* at 5. Both DPS and the Attorney General's Office of Texas maintain gang databases, which, along with personnel familiar with the databases, are likely located in the agencies' Austin headquarters. *See id.* at 5–6. Other law enforcement officials from across Texas may be involved in cell phone and computer analysis. *See id.* at 5. Finally, officers from the FBI San Antonio office as well as agents from the Bureau of Alcohol, Tobacco, Firearms, and Explosives Austin Field Office may have relevant knowledge. *See id.*

- The Waco community has been saturated with articles and statements prejudicing Plaintiffs. *See id.* at 6–8.

## Analysis

### I.     Standard for Transfer Under § 1404(a)

Defendants move to transfer this case for the convenience of parties and witnesses under 28 U.S.C. § 1404(a). Section 1404(a) provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Duren v. Barrack*, 376 U.S. 612, 622 (1964)). Because a plaintiff has the privilege of choosing the venue in which to file, the defendant bears the burden of proving a transfer of venue would be "clearly" more convenient for the parties and witnesses and in the interest of justice. *See In re Volkswagen of Am. Inc.*, 545 F.3d 305, 315 (5th Cir. 2008) ("*In re Volkswagen II*"); *Schexnider v. McDermott Int'l, Inc.*, 817 F.2d 1159, 1163 (5th Cir. 1987) ("[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum that may be overcome

only when the private and public interest factors clearly point towards trial in the alternative forum.").

The preliminary question under § 1404(a) is whether the action "might have been brought" in the destination venue. *In re Volkswagen II*, 545 F.3d at 312.  After determining the suit could have been filed in the destination venue, the Court weighs the parties' private interests in convenience and the public interest in the fair administration of justice. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1974).  The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).  The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws . . . ." *Id.*  Although these private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 315.

## II.    Application

### A.    Destination Venue

The Court turns first to the preliminary question of whether the suit could have been filed originally in the destination venue. *Id.* at 312.  An action may be brought in the district in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391(b)(2).

There is no dispute the events leading to Plaintiffs' claim arose within the Western District of Texas. Thus, this case could have properly been brought in any division, including the Waco Division, within the Western District of Texas.

**B.      Private Interest Factors**

**1.      Relative Ease of Access to Sources of Proof**

To demonstrate transfer will result in more convenient access to sources of proof, a movant must identify the sources of proof with specificity. *J2 Glob. Commc'ns, Inc. v. Protus IP Sols., Inc.*, No. CIV A 6:08-CV-211, 2009 WL 440525, at *2 (E.D. Tex. Feb. 20, 2009) (citing examples of movants identifying "sensitive [and bulky] physical evidence and a crash site"). Further, this factor is not generally given much weight in the § 1404 analysis given the ease in which information can be transferred with today's technology. *See Mateos v. Select Energy Servs., L.L.C.*, 919 F. Supp. 2d 817, 822 (W.D. Tex. 2013).

Defendants do not identify specific evidence, stating instead that "[t]he records, information, evidence, and documentation of the Waco Police Department, McLennan County Criminal District Attorney's Office, the state courts, and the McLennan County Grand Jury are all located in Waco . . . ." Mot. [#8] ¶ 2.07; *see J2 Glob.*, 2009 WL 440525, at *2 ("[O]ther than generally referring documents, [Defendants] have not identified any specific evidence, physical or otherwise."). Defendants' general statement fails to show transfer would make access to these sources of proof more convenient.[2]

---

[2] Plaintiffs, on the other hand, do reference specific sources of proof located in Austin: video evidence obtain by DPS—which allegedly shows Plaintiffs did not participate in the violence—and evidence related to gang databases maintained by DPS and the Attorney General's Office. *See* Am. Resp. [#13] at 5–6. This evidence will likely be kept and maintained at the respective agencies' Austin headquarters. *See id.*

Because Defendants have not specified any reason why transferring this case to the Waco Division would make access to particular sources of proof more convenient, the Court finds this factor is neutral.

### 2.    Availability of Compulsory Process

The second factor refers to Federal Rule of Civil Procedure 45, which addresses the court's subpoena power.  Under that Rule, the court can compel a person to attend a trial, hearing, or deposition within 100 miles of where the person resides, is employed, or regularly transacts business. FED. R. CIV. P. 45(c)(1)(A).  The court can also require parties or party officers to attend a trial, hearing, or deposition anywhere in the state where the person resides, is employed, or regularly conducts business. FED. R. CIV. P. 45(c)(1)(B)(i).  Finally, the court can require a nonparty witness to travel more than 100 miles within the state where they reside, are employed, or regularly transact business only if they would not, as a result, incur "substantial expense."  FED. R. CIV. P. 45(c)(1)(B)(ii).

Defendants argue transfer is warranted because Defendants and potential nonparty witnesses, including "law enforcement officers, prosecutors, . . . judicial personnel," and eye-witnesses, reside in McClennan County within the Waco Division's subpoena power. Mot. [#8] ¶ 2.08. But Plaintiffs claim the majority of potential nonparty witnesses do not reside in the Waco area. *See* Am. Resp. [#13] at 3–5. Rather, of the 244 bikers who were arrested or detained, 24 reside in counties served by the Austin Division and 159 reside in counties served by the Southern District of Texas, the Northern District of Texas, and the Eastern District of Texas. *See id.* at 4. Plaintiffs also allege law enforcement officials involved in the investigation came from around the state, including Austin. *See id.* at 5, 10 ("DPS officers from Austin outnumber Waco DPS officers almost 2 to 1.").

Party witnesses fall within both the Austin and Waco Divisions' subpoena power under Rule 45(c)(1)(B)(i): Plaintiffs and Defendants reside in Texas and thus can be required to attend a trial anywhere in Texas. *See* FED. R. CIV. P. 45(c)(1)(B)(i). Similarly, the scale is likely balanced with regard to nonparty witnesses. The Waco and Austin Division will both have power to compel some nonparty witnesses who live within 100 miles or who will not incur "substantial expense," but not others.[3] *See* FED. R. CIV. P. 45(c)(1)(A), (B)(ii). Thus, the Court finds this factor is neutral.

### 3.      Cost of Attendance for Willing Witnesses

"When a movant claims that transfer is warranted for the convenience of witnesses, the movant must specifically identify the key witnesses and outline the substance of their testimony." *Mateos*, 919 F. Supp. 2d at 823 (internal quotations and citation omitted). Courts generally apply the 100-mile rule when evaluating this factor: "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen I*, 371 F.3d at 204–05. Yet this factor can be neutral if the transferee division is not a convenient forum for all witnesses. *J2 Glob.*, 2009 WL 440525, at *4.

Neither party submitted a list of key witnesses with summaries of those witnesses' relevant knowledge. Defendants broadly state, "Defendants and many witnesses reside within the Waco Division and will have to travel to Austin from the Waco area each day to attend trial, and/or incur the expense of lodging to stay in Austin . . . ." Mot. [#8] ¶ 4.04. But Plaintiffs have alleged the

---

[3] Neither party provides a list of potential nonparty witnesses or their addresses. Thus, the Court's analysis rests on the resident data provided by Plaintiffs, showing how many bikers and DPS officers reside in cities and/or areas throughout Texas (i.e. Houston, East Texas). *See* Am. Resp. [#13] at 3–5. The Court acknowledges this data does not allow for precise application of the 100-mile rule.

majority of potential nonparty witnesses reside outside of Waco in counties across the state. *See* Am. Resp. [#13] at 3–5. Many of these witnesses will be similarly inconvenienced if this case is heard in Waco. Either forum, then, will be inconvenient for some witnesses.

Defendants argue the requirement to identify specific material witnesses is not part of the venue statute and such a requirement in this case, where "much of the information is part of ongoing criminal investigations and prosecutions," "would require the law enforcement officers or prosecutors sued to file in the public record information protected under the law enforcement privilege in order to obtain a transfer of venue." Mot. [#8] ¶ 1. The Court agrees the venue statute does not explicitly state such a requirement. *See* 28 U.S.C. § 1404. Numerous district courts within Texas, however, have addressed a defendant's identification of key witnesses while analyzing this factor. *See, e.g.*, *Tapia v. Dugger,* No. CIVA SA06-CA-0147-XR, 2006 WL 2620530, at *4 (W.D. Tex. Sept. 7, 2006) ("The moving party must specifically identify the witnesses and outline the substance of their testimony."); *Dupre v. Spanier Marine Corp.*, 810 F. Supp. 823, 825 (S.D. Tex. 1993) ("[T]the moving party must do more than make a general allegation that certain key witnesses are needed. . . . The movant must specifically identify the key witnesses and outline the substance of their testimony."); *Empty Barge Lines II, Inc. v. Dredge Leonard Fisher*, 441 F. Supp. 2d 786, 793 (E.D. Tex. 2006) ("Conclusory allegations are not sufficient—the moving party must identify the key witnesses to be called and present a generalized statement of what their testimony would include.") (internal quotations and citation omitted). Still, the Court acknowledges Defendants' right to protect certain information under the law enforcement privilege. *See In re U.S. Dep't of Homeland Sec.*, 459 F.3d 565, 569 (5th Cir. 2006).

But even disregarding Defendants' failure to provide a list of key witnesses, Defendants have not shown the cost of attendance factor weighs in favor of transfer. While Defendants state "[a]lmost all potential law enforcement witnesses and prosecutor witnesses that either side could possibly call to testify reside in McLennan County," Plaintiffs have shown that a number of potential witnesses reside within the Austin Division and other parts of Texas. Mot. [#8] ¶ 1; Am. Resp. [#13] at 3–5. *See also Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*, 982 F. Supp. 2d 714, 726 (W.D. Tex. 2013) ("Although a defendant can assert that the cost of obtaining the attendance of witnesses will be substantially less in the forum it proposes, courts recognize that the chosen forum is rarely the least expensive venue for every individual affiliated with the case."). Therefore, transferring the case to the Waco Division would only shift the burden from the Waco witnesses to the Austin and other Texas witnesses. *See id.* ("[G]iven that there are likely a substantial number of witnesses in both the Western District of Texas and the Southern District of Texas, the only practical effect of transfer would be to impermissibly shift inconvenience from the moving party to the non-moving party.").

For these reasons, the Court finds Defendants have failed to show transfer to the Waco Division will be more convenient for the witnesses than the Austin Division. This factor is neutral.

### 4.      All Other Practical Problems

Defendants assert appearances in the Austin Division of Defendants and Waco law enforcement officers will burden and impair the activities of the Waco Police Department and the Waco Criminal District Attorney's Office. *See* Mot. [#8] ¶¶ 2.11, 4.05. This same argument, however, also applies to the law enforcement officer witnesses who reside in Austin and across

Texas. *See* Am. Resp. [#13] at 4–5. The Court finds this argument does not weigh in favor of transfer.

Plaintiffs suggest a jury pool in the Waco Division will be unfairly biased due to the publicity surrounding the shooting. *See id.* at 6–8, 13–14, 16. Indeed, there is no denying the extensive public coverage of this incident, especially with regard to the underlying criminal case.[4] The Court agrees with Defendants, however, that this is not the appropriate time for the Court to determine whether pretrial publicity has unfairly prejudiced or tainted the jury. *See Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 631 (5th Cir. 2008) (describing district judge's decision to reserve ruling on motion to transfer venue until he conducted voir dire to determine if publicity unfairly prejudiced the jury.); *Davis v. City of Fort Worth*, No. 3:14-CV-1698-D, 2014 WL 2915881, at *5 (N.D. Tex. June 25, 2014) (finding a tainted jury was not a reason to decline to transfer the case); *Thurmond v. Compaq Computer Corp.*, No. 1:99-CV-0711(TH), 2000 WL 33795090, at *13 (E.D. Tex. Mar. 1, 2000) ("[V]oir dire is the cure for any [jury] 'bias' that may result from exposure to pre-trial publicity.") (internal citation omitted). Thus, the Court finds the existence of pretrial publicity does not weight in favor or against transfer.

In sum, Defendants have failed to show any of the private factors weight in favor of transfer to the Waco Division.

## C.    Public Interest Factors

### 1.    Administrative Difficulties Flowing from Court Congestion

Defendants state, "based on the discussions had during a previous hearing it appears that the Austin Division is significantly more congested than the Waco Division and that, therefore, this factor weighs in favor of transfer." Mot. [#8] ¶ 4.06. Defendants do not cite a particular hearing or

---

[4] It is likely that no court will be able to determine the impartiality of a jury pool until the underlying criminal proceeding has been resolved.

any specific testimony. The Court concludes that data is not available to compare administrative difficulties between divisions within the Western District of Texas. *Cf. Rosemond v. United Airlines, Inc.,* No. CIV.A. H-13-2190, 2014 WL 1338690, at \*4 (S.D. Tex. Apr. 2, 2014) (comparing the median time interval from filing of case to disposition between district courts). Thus, the Court finds this factor is neutral.

### 2.      Local Interest in Having Localized Interests Decided at Home

Both the Austin and Waco Divisions have a local interest in adjudicating a case that involves and affects residents from both cities as well as other parts of the state. The tragic events at the Twin Peaks restaurant have undoubtedly impacted communities throughout Texas where detained or arrested bikers and the law enforcement officials involved in the investigation reside. *See* Am. Resp. [#13] at 3–6. Some of these areas are served by the Austin Division, some by the Waco Division, and some by neither. Because both divisions have an interest in adjudicating this case, this factor is neutral.

### 3.      Familiarity of the Forum with the Law that Will Govern the Case

Neither division is more or less familiar with the law that will govern this case. This factor is also neutral.

### 4.      Avoidance of Unnecessary Problems of Conflict of Laws

This case does not involve any conflict of laws issues that would make this case better suited for either the Austin or Waco Division. This factor is neutral.

### Conclusion

The Court finds, based on its analysis of both private and public interest factors, the Austin Division is just as convenient to the parties and witnesses than the Waco Division. Because

-12-

Defendants have not shown the Waco Division would be a clearly more convenient forum or transfer is in the interest of justice, Plaintiffs' initial choice of venue in the Austin Division will be respected.

Accordingly,

IT IS ORDERED that Defendants Stroman, Chavez and Reyna's Joint Motion to Transfer Venue [#8] is DENIED.

SIGNED this the _20_ day of December 2016.

_Sam Sparks_

SAM SPARKS
UNITED STATES DISTRICT JUDGE